LUDOVINO ACOSTA, en su carácter de padre con patria potestad sobre su menor hija RADEGUNDA ACOSTA, demandante y apelado, *v.* PORTO RICO RAILWAY, LIGHT & POWER CO., demandada y apelante.

Núm. 8416.—*Sometido:* Junio 24, 1942.. *Resuelto:* Julio 31, 1942.

*Brown, González & Newsom* y *E. Córdova Díaz,* abogados de la apelante; *E. Acosta Domenech,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Este es un pleito de daños y perjuicios fallado en favor del demandante. En la demanda se reclamaron quince mil dólares. La sentencia concedió dos mil.

Se alegó que el 19 de julio de 1938, a las 7:50 p. m., en la parada 17 de la avenida Ponce de León, en Santurce, un carro eléctrico de la demandada, conducido de manera negligente y descuidada, arrolló a la niña Radegunda Acosta, lanzándola entre los rieles de la vía y causándole la fractura de la pierna derecha, fuertes contusiones en ambas caderas, contusiones en el pecho y en la espalda y una herida profusa en la región parietal izquierda.

La causa del accidente se expuso en el hecho cuarto de la demanda como sigue: "Que el accidente se debió única y exclusivamente a la negligencia, temeridad y falta de cuidado del conductor, quien manejaba dicho carro eléctrico a velocidad excesiva mientras bajaba por una pendiente, sin tocar aparato alguno que anunciara su proximidad y sin tomar precauciones para garantizar la seguridad de las personas que cruzaban y pasaban por dicho sitio."

En su contestación la demandada admitió la ocurrencia del accidente, pero negó que se debiera a la negligencia de su empleado, en los siguientes términos: "Niega esta demandada que el accidente mencionado se debiese única o exclusivamente, o en forma otra alguna, a negligencia, temeridad o falta de cuidado alguna del conductor que manejaba el carro eléctrico mencionado, y niega además específicamente esta demandada que dicho conductor manejase dicho carro eléctrico a velocidad excesiva, sin tocar aparato alguno que anunciase su proximidad, o sin tomar precauciones para garantizar la seguridad de las personas que cruzasen o pasasen por dicho sitio; aunque admite esta demandada que antes de ocurrir dicho accidente el tranvía bajaba por una pendiente; alegando, sin embargo, esta demandada que era una pendiente muy pequeña, y alegando además que antes de ocurrir dicho accidente el tranvía de la demandada era conducido a una velocidad moderada, dándose aviso de su proximidad mediante el toque de campana y por el ruido de su movimiento y tomando su motorista o conductor todas las precauciones necesarias e indicadas."

Como defensas especiales alegó que no medió culpa o negligencia por su parte, que el accidente se debió únicamente a la culpa y negligencia de Radegunda Acosta, y que en el supuesto de que pudiera imputársele negligencia, también medió negligencia contributoria de parte de Radegunda.

Celebrado el juicio, se dictó sentencia declarando la demanda con lugar con la limitación indicada. Explicando su criterio, el juez sentenciador, en su relación del caso y opinión, se expresó así:

"La vista del juicio fué celebrada el día 27 de noviembre de 1939, con asistencia de ambas partes y sus respectivos abogados, practicándose prueba oral y documental.

"De esa prueba y de las admisiones contenidas en la contestación de la demandada, resultó probado a satisfacción de la corte que el día 19 de julio de 1938, de 7:30 a 7:45 de la noche, en los momentos en que el tránsito de vehículos estaba detenido en la avenida

Ponce de León, parada 17, Santurce, el carro eléctrico de la demandada estaba detenido en dicha parada y que la demandante, aprovechando esa oportunidad, cruzó la carretera, y al tratar de cruzar las vías de la demandada, dicho carro eléctrico había emprendido la marcha, el motorista, sin darse cuenta que la demandante cruzaba las vías, siguió desarrollando el carro eléctrico sin mirar lo que pasaba al frente hasta desarrollar cinco puntos, que hacen una velocidad de 20 a 25 kilómetros por hora, y que al venir en contacto con la demandante, la lanzó y atrapó bajo las ruedas del carro y la arrastró algunos pies sobre la vía, causándole los daños referidos.

"La prueba de la demandada tendió a demostrar que el accidente se debió exclusivamente a la negligencia de la demandante; que la demandante cruzó violentamente la carretera Ponce de León y subió las vías de la demandada sin fijarse en la proximidad del carro eléctrico que se acercaba.

"Tanto la prueba de la demandante como la de la demandada están contestes en que en el sitio donde ocurrió el accidente hay un paso o puentecillo de concreto por donde el público cruza de la avenida Ponce de León a la acera contigua a las vías de la demandada (véanse *exhibits* 1, 2, 3, 4, 5 y 6); que estas vías corren paralelas a la carretera o avenida Ponce de León, y que el tránsito de peatones por este sitio es continuo.

"Existe un marcado conflicto en cuanto a las precauciones tomadas por el motorista del carro eléctrico de la demandada. Los testigos de la demandante declararon que el motorista no venía mirando hacia el frente ni tocaba campana, y ello lo demuestra la forma en que ocurrió el accidente. La declaración de la Dra. Marcolina Fernández, corroborada por su hermana Ricarda Martínez, pasajeras en el carro eléctrico y testigos de la demandada, lo describe así: 'Sentí un campanazo fuerte, y entonces vi la aglomeración de gente.' Ello indica que fué en ese preciso momento que el motorista se dió cuenta de lo que sucedía ante él.

"El sitio del accidente es muy concurrido, inmediatamente al teatro Martí, situado entre las paradas 16 y 17 de Santurce. El suceso ocurrió de 7:30 a 8:00 de la noche, hora en que gran parte del público que asiste a los espectáculos en dicho teatro tiene necesariamente que cruzar la vía, y por lo tanto, era ineludible el deber del motorista de usar el mayor grado de diligencia para proteger la seguridad de las personas que necesariamente cruzan de un lado para otro, pasando por sobre la vía de la demandada.

"No sería irrazonable asumir que si el motorista hubiera venido mirando hacia adelante hubiera tenido oportunidad de ver a la de-

mandante momentos antes del suceso y evitar el suceso. La prueba demuestra que el carro le dió con el lado izquierdo, según la dirección en que iba, esto es, de Santurce hacia San Juan.

"Y la corte ahora, resolviendo en conjunto el conflicto de la prueba, y tomando en consideración la forma en que declararon los testigos de ambas partes, da entero crédito al testimonio de la demandante y de sus testigos, y de acuerdo con lo probado, estima que éste es un caso de negligencia por parte del motorista, y llega a la conclusión de que este accidente se debió a su falta de cuidado, y que la demandante no es responsable de descuido o imprudencia alguna, siendo por lo tanto la Porto Rico Railway, Light & Power Co. responsable de los daños y perjuicios sufridos y ocasionados a la demandante Radegunda Acosta como consecuencia del accidente.

"La demandante sufrió la fractura de la pierna derecha más abajo de la rodilla, con motivo de lo cual fué sometida a dos operaciones quirúrgicas en el Hospital Presbiteriano de San Juan, donde tuvo que ser recluída por espacio de cinco meses. Además de la fractura, recibió una herida en forma de herradura en la región parietal izquierda, y golpes en distintas partes del cuerpo. Apreciando en conjunto los daños sufridos, los sufrimientos morales y los dolores físicos, la corte crece que una indemnización de $2,000 es razonable para la demandante."

La demandada apeló. Señala cuatro errores, el primero cometido a su juicio por la corte al admitir la prueba sobre el hecho no alegado en la demanda de que el conductor del tranvía no miraba hacia adelante, el segundo al resolver que el hecho de que el conductor viniera mirando hacia atrás fué la causa próxima del accidente, el tercero al declarar probado que el conductor no miraba hacia adelante y el cuarto al condenar a la demandada a pagar dos mil dólares de indemnización.

El primero no fué cometido. Conocemos cómo se alegó la negligencia. Es cierto que se imputaron los actos específicos de velocidad excesiva y falta de aviso de aproximación, pero seguidamente se agregó que el motorista guió el tranvía sin tomar precauciones para garantizar la seguridad de las personas que cruzaban y pasaban. Y de ser cierto que al poner en marcha de nuevo el carro en vez de mirar

hacia adelante lo hizo hacia atrás, difícilmente puede concebirse una falta mayor de precaución por parte del motorista y por consiguiente de la demandada.

"La prueba y el derecho a recobrar deben limitarse a la negligencia alegada, aunque las alegaciones a este respecto no sean específicas necesariamente. Si en vez de hacer meramente una alegación general permisible, el demandante expone en detalle los actos específicos de negligencia, sus derechos quedan limitados de conformidad. Así, si en vez de alegar en general un descarrilamiento negligente, expone los motivos específicos del descarrilamiento, él no puede descansar en otros motivos. Pero el demandante no está limitado a un alegado acto específico de negligencia cuando los otros hechos en conjunto alegados por él demuestran negligencia independientemente de dicho acto específico. Y si alega conjuntamente negligencia general y específica, fundando su reclamación en ambas, no está limitado a la alegación específica, como cuando alega negligencia tanto en el manejo de un tranvía como en la condición defectuosa e insegura del combinador (controller). . . ."
2 Bancroft's *Code Pleading* 1777, sección 1140.

■ Para resolver si los errores segundo y tercero fueron o no cometidos, hemos examinado toda la larga y confusa evidencia que ambas partes practicaron. Quizá el accidente ocurrió como dicen los testigos de la demandada. Pero la corte que los vió y oyó declarar no les dió crédito y puso por el contrario su confianza en los del demandante.

La argumentación del apelante impresiona en su favor mas no hasta el punto de dejar convencido al juzgador en apelación de que el juzgador en primera instancia erró de modo manifiesto o actuó con pasión, prejuicio o parcialidad. No cabe en su consecuencia la revocación. Creída la prueba del demandante, hay base en ella para sostener las conclusiones de la corte de distrito y no es del todo imposible que el accidente ocurriera en la forma expuesta en dichas conclusiones.

■ El cuarto y último de los errores señalados no se argumenta separadamente en el alegato del apelante. No encontramos razón de peso para rebajar la indemnización con-

cedida. Las heridas fueron serias y largo su tratamiento. Los sufrimientos físicos debieron ser intensos. Y no resultaría excesiva la compensación aunque la paciente pudiera sanar por completo como aseguró el perito médico de la demandada.

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Sr. Travieso no intervino.